## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2020, 11:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Khidhr Hardister, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 28, 2020 <br><br> Court of Appeals Case No. 19A-CR-2146 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Shatrese Flowers, Judge <br> The Honorable James K. Snyder, Commissioner <br><br> Trial Court Cause No. 49G02-1902-F5-4933 |

**Bradford, Chief Judge.**

# Case Summary

[1] Khidhr Hardister was sentenced to five years, with one year suspended and four years in community corrections, after pleading guilty to Level 5 felony robbery. He was initially placed on home detention, but his placement was modified to work release after he violated the terms of his home-detention placement. Hardister then violated the conditions of his work-release placement by using illegal drugs. Following a revocation hearing, the trial court revoked Hardister's placement in community corrections and one-year suspended sentence and ordered him to serve the remainder of his five-year sentence in the Department of Correction ("DOC"). On appeal, Hardister challenges both the sufficiency of the evidence to support the revocation of his community-corrections placement and the trial court's order that he serve the remainder of his sentence in the DOC. We affirm.

# Facts and Procedural History

[2] On February 7, 2019, Hardister was charged with Level 5 felony robbery, Level 6 felony intimidation, and Level 6 felony residential entry. On May 1, 2019, Hardister pled guilty to Level 5 felony robbery. In exchange, the State agreed to dismiss the remaining charges. On May 24, 2019, Hardister was sentenced to five years with one year suspended and the remaining four years served in community corrections. He was then placed on home detention.

[3]     Two days after sentencing, Hardister violated the terms of his home-detention placement by tampering with and attempting to remove his electronic monitoring device. On May 28, 2019, a notice of violation was filed. His placement was subsequently modified from home detention to work release. Hardister was ordered to be in strict compliance with both community corrections and probation and was placed in the Duvall Residential Center ("Duvall"). On June 19, 2019, Hardister signed his conditions of placement, including the condition that he "shall not consume or possess alcohol or illegal drugs at any time while serving [his] sentence with Community Corrections, including while [he is] outside of the facility." State's Ex. 1.

[4]     Shortly after being placed at Duvall, an incident report was filed after Hardister was found in possession of "Katy," a form of synthetic marijuana. Tr. p. 28. No notice of violation was filed at this time. On July 9, 2019, staff at Duvall found Hardister lying unconscious in front of their building. After regaining consciousness, Hardister had to be assisted into the facility because he could not walk steadily. He also appeared dazed and his pupils were dilated. Hardister admitted to the staff that "he had taken hits of Katy." Tr. p. 15.

[5]     Notices of violation were filed on July 9, 2019 and July 10, 2019. The July 9, 2019 notice alleged that Hardister "failed to comply with the rules and regulations of [Duvall] regarding the possession or use of a controlled or illegal substance, including synthetic and look-a-like substances." Appellant's App. Vol. II p. 101. It also alleged that he failed to maintain contact with

community corrections. The July 10, 2019 notice alleged that Hardister "failed to comply with" community corrections. Appellant's App. Vol. II p. 104.

[6] The trial court conducted a revocation hearing on August 15, 2019. At the conclusion of this hearing, the trial court found that Hardister had committed a violation, revoked Hardister's probation and placement in community corrections, and ordered him to serve the remainder of his five-year sentence in the DOC.

# Discussion and Decision

## I. Sufficiency of the Evidence to Support the Revocation of Hardister's Community-Corrections Placement

[7] Hardister contends that the evidence is insufficient to support the revocation of his community-corrections placement.

> For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. The similarities between the two dictate this approach. Both probation and community corrections programs serve as alternatives to commitment to the Department of Correction and both are made at the sole discretion of the trial court. A defendant is not entitled to serve a sentence in either probation or a community corrections program. Rather, placement in either is a matter of grace and a conditional liberty that is a favor, not a right.
>
> ****

> Our standard of review of an appeal from the revocation of a
> community corrections placement mirrors that for revocation of
> probation. A probation hearing is civil in nature and the State
> need only prove the alleged violations by a preponderance of the
> evidence. We will consider all the evidence most favorable to
> supporting the judgment of the trial court without reweighing
> that evidence or judging the credibility of witnesses. If there is
> substantial evidence of probative value to support the trial court's
> conclusion that a defendant has violated any terms of probation,
> we will affirm its decision to revoke probation.

*Cox v. State*, 706 N.E.2d 547, 549, 551 (Ind. 1999) (internal quotations, citations, and footnotes omitted).

[8] Hardister was aware that as a condition of his placement at Duvall, he was prohibited from possessing or using any illegal drugs. Hardister testified during the revocation hearing that he had not taken or possessed Katy. The trial court, however, was not obligated to believe Hardister's testimony. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004) ("As a general rule, factfinders are not required to believe a witness's testimony[.]").

[9] Contrary to Hardister's claim that he had not used illegal drugs, the State presented evidence indicating that he had done so. Specifically, the State presented evidence that the staff at Duvall found Hardister lying unconscious in front of their building and, after regaining consciousness, he had to be assisted into the facility because he could not walk steadily. He also appeared dazed and his pupils were dilated. Hardister admitted to the staff that "he had taken hits of Katy." Tr. p. 15. Katy is "[b]etter known as spice or synthetic

marijuana." Tr. p. 15. Spice or synthetic marijuana is an illegal drug. *See* Indiana Code §§ 35-48-2-4(d)(22), 35-48-1-9.3. Hardister's condition when he was found unconscious by the staff at Duvall coupled with his admission that he took hits of Katy supported the conclusion that Hardister was under the influence of a controlled substance. The evidence is sufficient to prove that it was "more likely than not that [Hardister] did in fact use and or possess illegal substances." Tr. p. 32. The State's evidence is sufficient to support the trial court's revocation of Hardister's placement in community corrections. Hardister's claim to the contrary amounts to an invitation to reweigh the evidence, which we will not do. *Cox*, 706 N.E.2d at 551.

## II. Order to Serve Remainder of Sentence in the DOC

Hardister also contends that the trial court abused its discretion in ordering that he serve the remainder of his five-year sentence in the DOC. The trial court's decision as to the sanction imposed following a determination that a defendant violated the terms of his community-corrections placement "is reviewable using the abuse of discretion standard." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). "An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances." *Id.* "Indiana Code section 35–38–2.6–5 provides that if a person placed directly in community corrections violates the terms of the placement, the trial court may, after a hearing, revoke the placement and commit the person to the DOC for the remainder of the sentence." *Christie v. State*, 939 N.E.2d 691, 694 (Ind. Ct. App. 2011).

[11] Again, after pleading guilty, Hardister was sentenced to five years with one year suspended and four years in community corrections. Hardister committed a violation almost immediately after being sentenced. The trial court could have revoked Hardister's probation and community-corrections placement following this first violation but did not. Instead, the trial court gave Hardister another chance to avoid incarceration by modifying his placement from home detention to work release. Less than a month later, Hardister was the subject of an incident report after he was found in possession of Katy. He soon thereafter committed the violation at issue in this appeal.

[12] By accepting an alternative placement, Hardister agreed to abide by certain conditions. Hardister, however, failed to abide by those conditions. In revoking Hardister's community-corrections placement and ordering that he serve the remainder of his five-year sentence in the DOC, the trial court noted that Hardister committed numerous violations within a short time following his placement in community corrections, including violations committed after he was given a second chance to remain in community corrections. We cannot say that the trial court abused its discretion in determining that Hardister was "no longer a good candidate" for community corrections and ordering him to serve the remainder of his sentence in the DOC. Tr. p. 35.

[13] The judgment of the trial court is affirmed.

Robb, J., and Altice, J., concur.